Once again, I will state for the record that Justice Chetman is not available today. She will participate in this case and listen to the oral argument. So I'll ask counsel to speak up, make sure that the microphone captures all of your argument. Counsel, forward the appellate. Thank you. May it please the court. My name is Alan Ferris, and I'm the attorney for the appellant, Eric Hartmann. In this case, I think a quick review of the facts is mandated so we get a good understanding of why we're here today. Parties of this appeal were married in 2003, divorced in 2010 in Randolph County. They had two children. At the time of this case, the kids were almost 17 and 19 respectively. In the divorce, Mrs. Hartmann was granted custody of the children, and Eric, the father, was ordered $800 child support per month. At the time of the divorce, in the marriage settlement agreement, Mr. Hartmann also agreed to pay one half of all future college expenses. In 2012, which was about a little less than a year and a half after the divorce, Mr. Hartmann was injured while through his employment at Sun Truck Kia in St. Louis. Shortly thereafter, they were going to agree to or enter reducing Eric's child support to $76 weekly, presumably based upon some expectation of what his income would be during his unemployment or inability to work. In March of 2014, more than two years after the accident, Eric was awarded nearly $400,000 by the Missouri Labor and Industrial Commission. This award was upheld on appeal after the appeal by the employer and was increased with interest to about $444,000. There were, however, more than $273,000 in medical bills. After the deduction for attorney's fees and medical liens, Eric received $156,696.40, which included, as a part of the award, total temporary disability payments from the date of his injury in January 2012 to May of 2013. The balance represented his 60% permanent partial disability. Eric had undergone spinal fusion surgery as a result of his accident. At the time of the trial, he testified he was taking five different medications for his back, including morphine. He had been treated numerous times with epidural injections and was undergoing pain management therapy on a monthly basis. Despite his condition, your honors, Eric was working part-time at Total Eclipse Auto Sales, a used car business in Redwood. However, he testified he was unable to work during the days when he had to take morphine, and he had only earned about $2,000 through the first nine months of 2015. Upon the receipt of the proceeds, all child support agreement were cured. Eric testified that he had made no large purchases with his award and understood that he needed the award to meet his future living expenses. Through order of the trial court, 20% of the award was ordered to be escrowed by the court in my client's personal account. Rebecca, Eric's former wife and remarried, earns about $60,000 annually at her father's accounting firm and still resided in the former Merrill residence, which was valued by her financial affidavit at close to $300,000. Her only regular recurring monthly expenses, other than food and groceries and so forth, were her mortgage payment and two car loans, one for her daughter. The party's daughter, Brooke, at the time of the hearing, was 16 1⁄2 years old. She was doing quite well, the testimony was, at Redwood High School. She is a well-adjusted, mature young lady and has no need to see a psychologist or any professional counselor with regard to the effects of the divorce or any emotional issues. After a hearing on the issue by the trial court of an allocation of child support based upon Eric's award, the trial court refused to deviate from the statutory guidelines and ordered $31,339.28 be paid in child support, the full 20%. It is that order that serves as the basis for our appeal. Your Honors, I've been practicing since those guidelines were put in place, and recently, if there's anything that the Supreme Court has taught us with respect to child support here in the past few years, is that the amount of child support, what constitutes child support, the terms and conditions of child support, now is more relative and based upon circumstances than ever. For example, I see it every day that with the onset of the new parenting provisions of the Illinois Marriage and Dissolution of Marriage Act, you see lots and lots of 50-50 parenting. In many of those cases, we don't see strict adherence to the statutory guidelines because it's not fair. In addition, it appears now with the advent of the famous case generated in marriage and church by the Supreme Court, that noncustodial parents can actually receive child support. As I said, I started a few years before the guidelines were put in place, and who in their right mind would have ever thought that a noncustodial parent would be receiving child support now based upon those guidelines? I think as we move forward here, these guidelines have become more or less the exception than the rule. With respect to the issues before you, Your Honor, it's our contention that the trial court abuses its discretion in refusing to deviate from the guidelines in Section 505A1, which deviation is authorized by Section A2 of that section. There are also two other sub-issues, if you will, that we'll address during my argument, and that was the failure of the trial court to allow inquiry into all financial resources of a custodial parent, specifically the income and assets of her new husband. The second sub-issue is the propriety of ordering 20% of that portion of the award, which was associated to the temporary total disability payments, which were approved three and a half years before this order. It's our contention that this arguably constitutes a retroactive modification of a support. With respect to the calculation of child support, Your Honor, the Supreme Court has told us that this is a two-step process. First, the trial court must determine the party's income under Section A3 of 505. This provision, as we know, governs the definition of net income, all income from virtually every source minus certain deductions. Then Section A1 and A2 govern the second step in the calculation of child support. These provisions set forth the guidelines, and as we see in the cases that surfaced after the guidelines were introduced, were not intended to remove judicial discretion from the setting of child support, but provided a place to begin the analysis. The trial order under A2 is free to deviate from the guidelines after consideration of certain non-exclusive factors set forth in the statute, including the financial resources and needs of the child, financial resources of each parent, the standard of living the child would have had had the marriage not been dissolved, and the physical, mental, emotional, and educational needs of the child. As case law has stated, the statute makes clear that a range of considerations may affect the court's assessment, including the means and needs and capacity to produce income of both parents, custodial and non-custodial, as the court has stated. Initially, a type of non-recurring income, like we have here in a workers' compensation award, also has been found, as the case cited in my brief, to be something that court can consider deviation, because we're not looking at a monthly income, we're looking at a one-time lump sum payment. There is certainly no dispute, after the Supreme Court case in Mayfield in 2013, that the award of Eric constitutes income for child support purposes. But it's very important, I submit, to not stop the review there of Mayfield. A closer examination is respectfully required. It's contended by the appellant, Your Honors, that the Supreme Court, after looking at the case and the record in Mayfield, really had no choice but to go along with the order that stated that strict compliance of the guidelines was necessary. And we asked why. Number one, the ex-husband in Mayfield didn't ask for a deviation.  So how could a reviewing court do anything but go by the guidelines? Secondly, and there's more, in Mayfield, he failed to notify his former spouse of the award for several months. He admitted to buying hunting property, purchasing $20,000 in new furniture, and more than $3,000 in jewelry and furs. Nothing in even the most vivid imagination, Your Honors, could be farther from the facts in this case. Counsel for Rebecca was promptly notified of the award. Child support arrears accrued to date has been satisfied. And there was not one purchase made which could remotely be called extravagant. Eric's testimony was he recognized at age 50 he needed the money to continue his living expenses until he could get on Social Security or Medicare. That certainly is obviously quite in contrast to the ex-husband in Mayfield. And, as well, it's also obvious that Eric formally requested a deviation at the trial court level. Once we understand that Mayfield really doesn't call for an automatic application of the guidelines, we must look at the statutory factors that allow the trial court to deviate. The financial resources of the child. There's really no evidence the record is almost void of anything with respect to special needs of the daughter. She had just recently received a car, 16 years old. She's a well-adjusted teenager, planned to go to college, for which Mr. Hartman was willing to pay one half of all expenses. There certainly was nothing extraordinary requiring strict compliance of this want-some payment to adhere to the guidelines. The financial resources of the parents. The uncontradicted evidence, Your Honors, was that Mother had been working at her father's accounting firm for 25 years, earning about $60,000 annually. And at that point, Eric was precluded from inquiring about other financial resources of the new husband, which I'll get into hopefully later. And she was living in, as I say, the form of another residence. Eric was working part-time at the time he was able, and had only earned a couple thousand dollars. Certainly, there's a disparity between the earning capacity and incomes of these two people that the court should have taken note of. And I submit it to say it's not a huge stretch of the imagination to look at the disparity of the incomes in turf. The case with the noncustodial parent getting child support, this isn't really that far away from that. The next factor is the standard of living had the parties not been divorced. Given the fact that Eric was only injured about 18 months, less than 18 months subsequent to the parties' divorce, it's really hard to imagine that the child's standard of living could have been too much different had the parties still been married. I think if there would have been a problem with the standard of living, it was the cause was Eric's injury, not the divorce. So we submit that, as well, really no real evidence that the standard of living wasn't somewhat the same for this child after the divorce as it was before, or would have been, had they stayed married. Next, the physical, mental, emotional, and educational needs of the child. As well, there's really no evidence to give rise to a large lump sum award based upon special needs or physical disabilities for this child. I would submit, and we don't ask for deviation, we don't ask for nothing to be paid to the custodial parent. We believe that, and in my brief to the trial court, after looking at all the factors, we came up with the $10,000 that would have paid her car, something along those lines. Is that fair? Given Eric's circumstances, we think that's fair. We think that gives rise to a better life for the daughter. We're 18 months from her being 18 years old. He's already paid for, or obligated himself to the college. We think that that would be a reasonable disposition in this case. Thank you, counsel. You'll have an opportunity for rebuttal. Thank you. Counsel for the appellation. Good morning, guys. Mr. Ferris. Mr. Ferris gave you a quick rundown of the facts. Some of the facts that he is missing in this case is that Mr. Hartman was never current on his child support from the day they were divorced until the day we went to hearing on this case. Furthermore, he was ordered to provide insurance for the minor children, which he has never done. So the noble picture he paints of his client is not exactly true. So I just want to make sure the court is… Is this health insurance you're talking about? Health insurance. He was ordered to provide health insurance for the minor children, which he did not, which there is a rule of show cause pending to this day, which will be taken care of after we're finished with this case. So when Mr. Ferris says that his client deserves a fair outcome where he shouldn't have to pay as much money, I have a hard time swallowing that. I've seen this case. I've seen the facts. I was in the courtroom. I know what this guy is doing. He's trying to get out of supporting his minor child. That is the fact. If you look at the worker's compensation award, there's no reason he should not be working today. He gets on the stand and says I've got to take medication, I can't go to work, and his child support is practically nothing right now. He's paying $216 per month. Somebody mowing grass – when I was in high school mowing grass for a living, I could have paid that in child support had I been ordered to. This is a grown man. And they said Dr. Merkin told the claimant he could start looking for a sales job, and that was in March 2013. He did not formally impose any restrictions or limitations on the claimant. Another doctor did not contain any opinion that the claimant was not able to work on a temporary or permanent basis, and that she testified it was possible for the claimant to perform a sales job. So when he's asking you to be fair and give him a break, it's not – it would not be proper in this case. If anyone's gotten windfall in this case, it has been Mr. Hartman. He has gotten away with not paying full amount of child support. Who was supposed to make the ends meet when my client was raising a minor child and was sole custody and he wasn't paying child support when he was behind on child support? She made the ends meet. So when he says that he wants a fair outcome, it's certainly not for Mr. Hartman in this case. I just want to address specifically. So Mr. Ferris is correct when he says that what we have to do is apply the guidelines, and then the court has to make a determination whether or not the guidelines should be deviated from. So 20 percent, 20 percent come out to $31,000 and some change is what the judge ordered in this case. And the judge in this case summed it up very well at the very end of his order when he said, none of the reasons advanced by Eric support a finding that a deviation from the guidelines is appropriate after considering the best interests of the child. Mr. Hartman bases his argument on the fact that my client makes $60,000 a year, which is a decent living. I grant that. But it's not like the world on fire. Certainly not when you're raising two children alone without adequate amount of child support. Every dime that she makes, if you look at her financial statement and the record, goes towards mortgage, food, utilities, car payments, car insurance. And one thing that I really love is when Mr. Hartman gets on the stand and says, yeah, she's doing really good. She's got her own car. Who paid for the car? My client, by herself. She's paying for it to this day. She has a loan on it. So he has not been paying his fair share of the expenses in this case. His child support has been extremely low since the day of the divorce, and he has never been current. If you look specifically at the guidelines, number one, the financial resources and needs of the child. There was no evidence on the financial resources of the child. The child, in this case, did not herself have any financial resources. There was no trust set up. She has no money sitting out there for her care. As far as her needs are concerned, there was no specific evidence regarding any special needs or specific needs of the minor child. However, the court has determined that when a child grows older, it is presumed that the cost of raising that child increases as well. For instance, driving a car, insurance for the car, playing sports, everything that goes along with that. The cost of raising a minor child increases. The fact that she's 16 and a half years old in this case, when this case was heard, has nothing to do with a deviation. That's not a reason for a deviation. Furthermore, another reason for not giving a deviation is the fact that he says he didn't spend any of the money when he got it. Congratulations, but that's not a factor and that's not a reason to grant a deviation. Financial resources and needs of the custodial parent. Again, if you look at her financial statement, every dime that she makes goes towards supporting herself and raising the minor child. The standard of living she is providing is the same as it was when they were married. They stayed in the marital residence. She's kept up the mortgage and the record shows she's working two jobs to do that. She works at her father's accounting firm and she works as a part-time bartender in Redbud. So, she's had to work two jobs to maintain the standard of living for the minor child. Had they remained married and he got injured, the child would have certainly got to experience the entire amount of the settlement as opposed to just 20%. The physical and emotional condition of the child and her educational needs. There is no evidence of any physical or emotional problems of the minor child, which is good. Which means that the sole custodian, my client, has done a good job in raising the minor child and her educational needs. Yes, it is ordered that he's going to cover half of the future college expenses, but given his track record on paying child support, I doubt that that's really going to happen. But, we haven't gotten that far yet. The financial resources and needs of the non-custodial parent. I will refer back to the WordComp decision where the doctor said there's no reason he shouldn't be out working right now, getting a job, getting a sales job. That's what he has experience doing. That's what he should be doing right now. Him saying that he can't go to work because of his injury is in his own mind. The doctors have said he can go back to work. He should be working. He should be paying child support at a larger rate, but he's not. That's exactly why the court was correct in granting $30,000 in this case, because it saw an opportunity where he can't get out of paying child support. This is a chance where she's going to get the money that she needs to raise the minor child, and they've already escrowed 20% of it. As far as considering my client's current spouse income, the court properly sustained my objection when Mr. Ferris asked my client what the income was of her current spouse. All the cases that Mr. Ferris cites except for one are college expense cases. Now, that is a totally different standard we apply when we go into a courtroom and we award post-majority expenses and college expenses. The cases that Mr. Ferris cites except for one, I don't know if this is right, the Keown case, K-E-O-W-N, that is a child support case. It says the financial status of a current spouse may not be considered to ascertain the ability of a party to fulfill a child support obligation, but it may be equitably considered to determine whether the payment of child support would endanger the ability of the support-paying party and that party's current spouse to meet their needs. So there are situations where the spouse of a party may be considered in a child support setting of the support-paying spouse, not of the support-receiving spouse, or in post-majority expense cases. So the court was correct in sustaining my objection when Mr. Ferris tried to get into my client's current spouse's income. Briefly on the issue of whether or not the court properly considered the TTE of the appellant in this case, he didn't receive any TTE until the case was settled. So when he filed for a modification on January 9th, which I still don't understand, he filed for a modification on January 9th, saying that his income wasn't as high, but he didn't get injured until January 13th. So if he somehow predicted this was coming, I don't know. But the bottom line is, he was on unemployment, and that's what child support was based on in February of 2012, was his unemployment. The state of Illinois was involved in the case for my client at that time, and it said his child support of $76 a week, I believe it was, was based on his unemployment benefits. No mention of TTE was ever made. He didn't receive any TTE until he settled the case, and we went to court on dividing that amount of money. Income, you don't calculate child support based on income until you realize that income. He didn't realize that TTE income until he settled the case and he received it with the total settlement. So the trial court was completely within its bounds for considering the TTE that he received as the total settlement and calculating 20% of the total settlement. This is not a difficult case. Mr. Ferris cannot cite to one single family law case that is similar to this case where the court would find the deviation is proper. There are no compelling reasons. The fact that my client makes $60,000 a year is not a compelling reason to give Mr. Ferris' client the deviation. The fact that my client's and Mr. Ferris' client's child doesn't have any special needs is not a compelling reason for a deviation. The fact that she is 16 and a half years old proves the opposite, that there is an increased need for more support. The fact that Mr. Ferris' client believes that he cannot go to work and has special needs of his own is not a compelling reason, especially when the worker's top decision says that he should be at work, he should be making a living, and this should not be an issue. So I think the trial court got it exactly right on the order of 20%. I think this court should uphold the trial court's ruling and order Mr. Ferris' client to pay $31,000 to my client for child support pursuant to Section 505. Thank you. Thank you, Counsel. We vote. Thank you, Your Honor. Well, in response, number one, we're not here on health insurance. We're not here on back support. We're not here on rules to show cause. We're not here on much of what Mr. Liefer painted my client as a total deadbeat, and we're not here on that. There will be other – I trust there will be other proceedings that deal with those issues. We're here on the allocation of a lump sum child support with worker's comp award, and whether it is just or an abuse of discretion, when you give $33,000 – $31,000 – over $30,000 to – as child support for a 16 – well, going on 17-year-old child. My client's obligated to pay half of all college expenses back in the divorce. Now, by payment of $30,000, assuming this daughter goes to college, I guess he's paid more than half or potentially more than half of the other side as well. With respect to his physical condition, Mr. Liefer – he cites the employer's doctors and their testimony. Of course he can go work. He can go jump off the roof and do whatever because it's the employer's testimony. With regard quickly, two – case law says two major things in determining support and how we can make it fair and equitable. Number one, look at the standard of living of the child at the parties maintain their standard – maintain their marriage. We've talked about that, and it was – this injury happened relatively soon after the divorce. So we – he either was injured while they were married or injured while they were divorced. I don't see where there's a major standard of living change from this point back to the divorce. Secondly, whether or not it will create a windfall to the custodial payer. And I submit again that when we review this, even as fairly as we can review it, it's excessive and nears unconscionability as far as more than $30,000 when there's less – a year, a year and a half less than minority. Quickly, the trend of cases, and now we're looking at support, looking at non-custodial income, custodial income, all financial resources. If Turk tells us anything, we look at everything in an examination of child support. I think it's fair game to see at least what the income and assets of the new husband were. If it was $250,000, does that make a change? If it's minimum wage, does that make a change in your money? I think it's certainly relevant to see what ability then the mother has to take care of her expenses. Maybe she pays everything on the mortgage and the car loans. Maybe he doesn't contribute anything. I haven't got a chance to even inquire as to that. With respect to the TTD, I understand completely the position with respect to the award. He didn't get any, but there was some presumable income. It's a month after his injury. It doesn't take a rocket scientist to say, well, he's probably going to get some TTD. Unemployment only went 26 weeks. The award of TTD was 69 and two-sevenths weeks. Certainly, that agreed to order with child support was contemplated on some kind of basis that he would get some. In normal cases, he'd get TTD. So we think that to go back and then, well, let's add another 20% out of the award from the TTD share is just not right. Thank you. Thank you, Counsel. We'll take this matter under advisement and issue a decision.